IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM GIPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17cv498-MHT-GMB |
| | ) | [WO] |
| HYUNDAI POWER TRANSFORMERS | ) | |
| USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Under consideration is Defendants' Motion to Compel Completion of Deposition of Ashlee Smith. Doc. 64. Having reviewed the motion and Smith's opposition to it (Doc. 66), along with Plaintiff William Gipson's response (Doc. 67), it is ORDERED, for the reasons stated below, that the motion is DENIED.

On May 2, 2018, Gipson first served on Defendants' counsel a notice of deposition for Smith, who is an employee of Hyundai Power Transformers USA, Inc. ("HPT"). Doc. 46 at 15–17. On May 8, Gipson followed up with a second deposition notice setting Smith's deposition for May 10. Doc. 46 at 20–22. The two notices included identical document requests. For reasons known only to HPT and its attorneys, Smith was not told that she would be deposed until the morning of May 10. Doc. 66-1 at 3. When provided with the notice, Smith began to gather the documents in her possession that were responsive to the requests. Doc. 66-1 at 4. After an argument with her coworkers over whether she should bring these documents to her deposition, Smith placed the documents

in a lock box in her office and left for her deposition. Doc. 66-1 at 4–5 & 17.

Smith's deposition commenced on May 10, 2018 at approximately 1:32 p.m. and continued until 4:52 p.m. with both Gipson's counsel and Defendants' counsel asking questions of Smith. Doc. 66-1. The deposition was purportedly suspended by agreement of the parties with the intention of resuming Smith's questioning after Defendants produced the documents responsive to the requests embedded in her deposition notice. Gipson confirms that Defendants did, in fact, produce responsive documents on May 11, but contends that defense counsel is withholding additional responsive documents. Doc. 57 at 5–6. When Smith arrived at work on May 11, HPT suspended her without pay. Smith later filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") relating to her suspension. Doc. 66-2.

Defendants now seek to compel Smith to sit for a second deposition, and Gipson joins in the request "as soon as he receives the documents responsive to his discovery responses for [Smith's] deposition notice." Doc. 67 at 6. But the parties' agreement that Smith must be re-deposed ignores the procedural protections of the Federal Rules of Civil Procedure.

Gipson contends that he properly suspended Smith's deposition pursuant to Federal Rules of Civil Procedure 30(d)(1) and (d)(3). Doc. 67 at 6. He did not. Rule 30(c)(1) mandates that "the examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." As a result, Rule 30 allows for a deposition to be suspended only to provide the deponent or a

party the opportunity to file a motion "to terminate or to limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). Even when suspended on this basis, the suspension may only last "for the time necessary to obtain an order." Fed. R. Civ. P. 30(d)(3)(A). No party has properly invoked this procedure by filing a motion to terminate or limit Smith's deposition.

Instead, the parties agreed—without Smith's input—to "suspend" Smith's deposition because Defendants had not yet produced to the documents requested in her deposition notice. The blame for this failure lies with the parties, not with Smith. Under Rule 30(b)(2), a deposition notice may only include document requests if either (1) a subpoena *duces tecum* will be served on the deponent, or (2) the requests are in a form consistent with Rule 34 and the subject is a party deponent. Gipson noticed Smith's deposition instead of serving her with a subpoena and thus travels under the second provision in Rule 30(b)(2). But Gipson served the requests far too late to allow adequate time for Defendants to respond or lodge objections to the requests prior to Smith's deposition. *See* Fed. R. Civ. P. 34(b)(2)(A) (allowing 30 days to respond to requests for production to a party).[1] On the other side of the equation, according to Smith's deposition testimony Defendants ignored the document requests entirely, or at least they developed no more comprehensive of a plan for gathering the responsive documents than to hand the list to Smith on the day of her deposition and let her fend for herself.

---

[1] Even if Gipson had issued a valid subpoena *duces tecum* on May 2, this would not have provided sufficient time to respond to the document requests under Rule 45(d)(2)(B).

All of this makes clear to the court that the parties created the problem they now want to slough off on Smith. The parties had an obligation to resolve their dispute over the document production prior to Smith's deposition, not midstream. Because the purported suspension of Smith's deposition was improper, her re-deposition would violate the one-day limitation of Federal Rule of Civil Procedure 30(b)(1), as Defendants acknowledged when it was Gipson who wanted to re-depose Smith. *See* Doc. 57 at 3. Thus, the parties may only re-depose Smith with leave of court under Rule 30(a)(2)(A)(ii).

Although no party formally has requested leave of court, to the extent this request is implicit in either Gipson's or Defendants' briefs it is due to be denied as both disproportionate to the needs of the case and inconsistent with Rule 26(b)(2)(C). Federal Rule of Civil Procedure 26 defines the scope of discovery to include

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Here, the record before the court establishes that the information sought from Smith is relevant, but that the burden and expense of obtaining Smith's supplemental testimony outweighs its likely benefit. Defendants articulate that they need Smith's second deposition to probe her testimony "that she maintained documents related to production employees' attendance and that she believes HPT discriminates against African American employees in administering attendance points and discipline for attendance." Doc. 64 at 4. But this subject was covered during her first deposition. *See,*

*e.g.*, Doc. 66-1 at 50–51. The court finds that any incremental benefit from a second deposition on this subject would be minimal and would be outweighed by the burden and expense of requiring Smith to sit for a second deposition. This is particularly true now that Smith is engaged in an intertwined EEOC claim.

Moreover, Rule 26(b)(2)(C) compels the court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in this action." This is such a case. Knowing that Defendants had not produced the documents requested in Smith's deposition notice, the parties proceeded with her deposition on May 10. In charging ahead then, they assumed the risk that they might be squandering their opportunity to ask Smith about these documents. The parties have not convinced the court that they should be allowed to take another swing at Smith under these circumstances.

DONE on the 26th day of July, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE